**Harvey D. RUSH, Jr., Appellant,**

v.

**Viola L. S. RUSH, Respondent.**

**No. 22242.**

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1955.

Douglas Stripp, Lynn E. Rhoads, Watson, Ess, Marshall & Enggas, Kansas City, for appellant.

James P. Aylward, George V. Aylward, James P. Aylward, Jr., Kansas City, for respondent.

BROADDUS, Judge.

This is an appeal from a judgment allowing the wife, plaintiff in a suit for separate maintenance, temporary support, suit money, and an attorney's fee.

On June 4, 1954, plaintiff filed a petition alleging that she was lawfully married to defendant on January 30, 1944, and that on March 1, 1954, defendant abandoned her, without good cause, leaving her without funds or support, and has refused and neglected to maintain and provide for her.

The record shows that the parties were first married in 1927. In 1940 defendant herein sued plaintiff for a divorce. She however, was granted the decree on July 25, 1941.

Defendant filed an answer in the instant case admitting the marriage, but denying all other allegations of the petition.

Thereafter, on June 29, 1954, plaintiff filed a motion for allowances *pendente lite* on the ground that she was without sufficient funds to adequately support herself and pay attorneys' fees and other expenses connected with prosecuting her suit; that defendant had substantial holdings and property and was well able to pay temporary alimony, attorneys' fees and expenses. On July 6, 1954, evidence was heard on the

motion and the court allowed plaintiff the sum of $750 per month as temporary maintenance, beginning on that date, $100 suit money and $1000 attorneys' fees.

The only evidence offered at the hearing came from the wife. Defendant, although present with his then counsel, did not see fit to take the witness stand. On July 8, 1954, defendant filed a motion "for re-hearing and new trial" in which no claim was made that the amounts awarded by the court were excessive. Eight days later defendant's attorney withdrew from the case and his present counsel entered their appearance. Thereupon an amended motion for a re-hearing and new trial was filed on behalf of defendant which asserted, among other things, that "the order is excessive." The motion was heard and overruled by the court on September 2, 1954.

Plaintiff testified that her husband is a manufacturer's representative, partner of Harvey D. Rush and Sons; that he earns around $20,000 a year and possesses real and personal property in an amount in excess of $200,000; that he owns a Cadillac Coupe, belongs to the Kansas City Club and the Mission Brook Polo Club, owns five Polo ponies, a herd or two of white faced pure-bred Hereford cattle which he keeps on his two farms, one of which is near Lees Summit and the other near Hartwell, Missouri; that he admitted to plaintiff that it cost the two of them $1,500 a month to live, including his club and bar bills.

Plaintiff further testified that at the time defendant abandoned her she and defendant were living at The Walnuts, an exclusive apartment-hotel located at 5049 Wornall Road in Kansas City, Missouri. They moved to The Walnuts July 1, 1953, having jointly executed a five-year lease calling for a monthly rental of $321.75. At the time of the hearing the rent on the apartment for a period of four months totalling $1287, had not been paid. Plaintiff gave a list of unpaid bills amounting to over $400. She was not employed and had been compelled to borrow money in order to live. Her income for 1953 was

$998 and she estimated that during 1954 it would be around $740. She owned $3,000 in government bonds and around 340 shares of General Baking Company stock which she purchased years ago with money given to her by her mother. She had an insurance policy with the Home Insurance Company and some Gulf State Utilities stock. From the evidence her total assets amounted to about $7000.

Defendant contends that the trial court erred in allowing plaintiff temporary maintenance, attorneys' fees and suit money, because she had ample means of her own. And that, in any event, the amount granted for temporary maintenance was grossly excessive.

In two recent cases we considered the many decisions in this State bearing upon the questions here presented. Those cases are Richardson v. Richardson, Mo.App., 270 S.W.2d 68 and Gregg v. Gregg, Mo. App., 272 S.W.2d 855.

The following language appears in the Richardson opinion: 270 S.W.2d loc. cit. 72. "Plaintiff chiefly relied upon the Rutledge case, Rutledge v. Rutledge, 177 Mo. App. 469, 119 S.W. 489, and the Penningroth case, Penningroth v. Penningroth, 71 Mo.App. 438. Those cases have been referred to many times in later decisions, and still the law remains that the allowance of alimony *pendente lite* to a wife pending a divorce action, while not regarded as absolute, is within the discretion of the trial judge. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455. As said by this court in Robertson v. Robertson, 137 Mo.App. 93, 119 S.W. 533, 534: 'All that can be said as to the law in such cases may be resolved into one sentence, viz., that it is largely in the discretion of the court whether to allow alimony *pendente lite* in any given case.' And unless it is made clearly to appear that such discretion has been abused the appellate court will not interfere. In the Whitwell case, supra, the evidence disclosed that the husband was worth $75,000 and his wife had separate property worth $8,000, which was in interest-bearing securities

and real estate. And, after referring to the Penningroth case, supra, the Supreme Court held that the trial court was well within its discretion in allowing alimony *pendente lite* to the wife."

In the Gregg case the wife owned real estate valued at $23,500, from which she received $150 per month; $4,000 in corporate stock, and a Cadillac automobile. In the course of the opinion we said: 272 S.W.2d loc. cit. 856, 857.

"The undisputed evidence is that the husband has contributed nothing to her support since the separation and that her only income is $150 a month from the real estate she owns. The court could properly find, under the evidence, that this amount was insufficient to maintain her on the standard of living which her husband provided during their marriage and to provide sufficient funds for prosecution of the divorce action. Consequently, should she be compelled to mortgage or sell property which she had acquired before the marriage in order to live during the pendency of the suit and to provide funds to prosecute the same? In the Robertson case, supra, we said, 137 Mo.App. 96, 119 S.W. 534: 'We believe she (wife) ought not to be required to dispose of all her available personal property for the temporary purpose in view.' In that case the husband had given her a house valued at $35,000 and personal property valued at $1,350, and they had lived together less than six months.

"A reading of all the many cases on this subject leads to the one question, did the trial court abuse its discretion in making the allowances?" In both of the above cases we held that it did not.

In the instant case it should be kept in mind that of the $750 a month temporary allowance to plaintiff for separate maintenance, $321.75 goes to pay the rent at The Walnuts. The defendant would still be obligated to pay this rent under the five year lease which he executed with The Walnuts in 1953 even though plaintiff lived at another location. Another significant fact, and one the trial court un-doubtedly took into account was that at the time the order was made four installments, totalling $1287, remained unpaid.

Considering all the facts and circumstances, and particularly taking into account the standard of living the parties were accustomed to prior to the separation, we are unwilling to hold that the trial court manifestly abused its discretion in making the allowances.

 We also hold that the court did not abuse its discretion in refusing to grant defendant a re-hearing. All of the evidence which he offered in support of his motion could have been developed at the original hearing. This he admits.

The judgment is affirmed.

All concur.